IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.

LAWRENCE KEITH LAPLANTE

Case No. 1:15-cr-1-MP-GRJ

_____

## REPORT AND RECOMMENDATION

Pending before the Court are: (1) Defendant's Motion To Suppress ECF No. 28 and (2) Defendant's Amended Motion to Suppress. ECF No. 30.  The United States filed a Response. ECF No. 32.  An evidentiary hearing was held before the undersigned on March 9, 2016 and, therefore, the matter is ripe for consideration. For the reasons discussed below, Defendant's Motions To Suppress are due to be **DENIED**.

### I.  Introduction

This case involves a one count indictment against Defendant charging the Defendant with possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2).  Defendant requests the Court to suppress from use in evidence images of child pornography the Federal Bureau of Investigation ("F.B.I.") extracted during a forensic search

of computer hardware and media storage devices authorized by a federal search warrant.

The case is different from most cases where law enforcement obtains a search warrant to search a computer for images of child pornography. The typical case involves the presentation of an affidavit in support of a search warrant detailing that images of child pornography have been sent to or received by a particular computer with an IP address. The probable cause in those types of cases concerns whether there is probable cause a computer is located at a particular residence and whether the internet address utilized by the target computer is located there. In this case there was no need to search a computer or identify an internet address. Instead, the computer hardware and media storage devices that were the focus of the search warrant were delivered to the FBI by a private citizen and therefore already were in the hands of the FBI. Therefore, the only question was whether there was probable cause that the computer hardware and media storage devices possessed by the F.B.I. contained child pornography.

Defendant raises three challenges to the search of the computer hardware and media storage devices. First, Defendant argues that there

was insufficient information in the affidavit in support of the application for a search warrant to establish probable cause because the information in the affidavit did not sufficiently establish the reliability of the information the confidential source ("CS") provided to the F.B.I.

Secondly—although Defendant did not raise this issue in his motion—at the hearing the Defendant argued that the affidavit in support of the search warrant was misleading because the affidavit did not include information concerning additional recorded telephone discussions between the CS and the Defendant, which took place between July 31, 2014 and August 9, 2014.  According to Defendant, the omission of any reference to these discussions was material to determining probable cause because the Defendant never mentioned child pornography in any these telephone calls.  Further, Defendant says that the fact there was no mention of child pornography during these recorded telephone conversations raises a serious question of the veracity of the CS's statement in the affidavit that the Defendant discussed child pornography with the CS.

Third, in Defendant's Amended Motion to Suppress, Defendant argues that the CS acted with the knowledge of the government or at the behest of the government when the CS retrieved the computer and media

3

storage devices from under a woodpile located on Defendant's property in Dixie County. Defendant says that because the search for the devices was not a private search but rather was a search carried out by the government the protections of the Fourth Amendment are implicated. Because the search for the devices on Defendant's property was conducted without a warrant the Defendant says the search was unconstitutional thus requiring the Court to suppress the fruits of the search.

## II.  Evidence And Testimony

The Defendant called as witnesses Joseph Armstrong and Keith Joyce, both of whom are Special Agents with the F.B.I. The substance of the testimony provided by the witnesses is as follows.

Agent Armstrong has been employed by the F.B.I as a special agent for twenty-five and a half years, all of which except for an eighteen month temporary duty assignment at the F.B.I. headquarters, has been in Gainesville.   Although Agent Armstrong is not the case agent on the investigation, he executed the affidavit in support of the search warrant and conducted all of the preparatory work leading up to the issuance of the warrant. This prep work included interacting with the CS, who provided the information to the F.B.I.

According to Agent Armstrong, the CS contacted the F.B.I. office on June 25, 2014 and initially spoke with Agent Armstrong.  The CS told Agent Armstrong that the CS previously had gone to the F.B.I. office in Jacksonville and had provided agents in Jacksonville with "some materials" the CS had obtained from Defendant's property in Dixie County that the CS suspected contained child pornography. The CS called the Gainesville office to inquire what was being done with the property he had turned over to the F.B.I.  In the telephone conversation between Agent Armstrong and the CS, the CS told Agent Armstrong that the CS had been receiving calls from the Defendant. The CS further told Agent Armstrong that during some of these calls Defendant had made reference to items that had been hidden in a woodpile on Defendant's property in Old Town, Florida.

Agent Armstrong also testified that he interviewed the CS again on July 28, 2014.  During this interview the CS told agent Armstrong that approximately four or five weeks prior to that the Defendant had specifically stated to the CS during those calls that the items the Defendant buried in the woodpile contained child pornography.  The CS further told Agent Armstrong that the Defendant had told the CS the child pornography had been produced by individuals in Russia, who the F.B.I. recently had

5

arrested.  The CS also relayed to Agent Armstrong that the Defendant told the CS the Russian organization which made the child pornography made millions of dollars from it. The Defendant further described to the CS that some of the child pornography was filmed in South America.  According to the CS, the Defendant told him that the producers of the child pornography would find underage children and adults to make the pornography and would fly the individuals to South America to produce the pornographic films.

After Agent Armstrong interviewed the CS, Agent Armstrong attempted to corroborate the information as best as he could.  Although Agent Armstrong was never able to corroborate whether the child pornography was made in Russia, Agent Armstrong contacted the F.B.I. office in Boston.  Agent Armstrong learned that the Defendant had been arrested and convicted on child pornography charges in the District of Massachusetts and was currently in a half way house in Massachusetts attempting to get released back into the Northern District of Florida so that the Defendant could take up residence in Dixie County.

Although Agent Armstrong was made aware that there were several recorded telephone conversations between the CS and the Defendant after

the interview and before the application for the warrant was presented to the Court on August 13, 2014, Agent Armstrong was not involved in handling the CS because he had been assigned to another squad. Although Agent Armstrong was assigned to another squad and was aware that the CS and the Defendant continued to talk, Agent Armstrong was never told by the F.B.I. agents handling the CS that anything was said by Defendant in those conversations which caused Agent Armstrong to question the veracity of the information in the affidavit.

According to Agent Armstrong, the CS said that the Defendant originally told the CS not to disturb what was buried under the woodpile. The CS apparently thought marihuana was buried there. Apparently, that is the reason the CS decided to dig it up so that the he could smoke the marihuana. When the CS discovered that digital storage media was buried under the woodpile and not marihuana, the CS assumed it was child pornography based upon what he had previously discussed with the Defendant and based upon the fact that the CS knew the Defendant had been convicted of possession of child pornography.

Although Agent Armstrong did not attempt to pull the phone records for the CS in an effort to corroborate the information supplied by the CS

7

Agent Armstrong called the halfway house in Boston to find out if there were recordings of telephone calls at the halfway house. Agent Armstrong was advised that the halfway house did not record telephone calls, which was the reason the F.B.I. then directed the CS to begin recording his telephone calls with the Defendant.  Further, as part of his investigation Agent Armstrong also looked into the criminal history of the CS, which he believed did not contain any felony convictions.

Further, as part of Agent Armstrong's investigation into the CS he became aware that the CS played a role in the arrest of the Defendant in the federal case in Massachusetts in which the Defendant was convicted for possession of child pornography.   Agent Armstrong confirmed that the CS was not a documented source for the F.B.I. at the time the CS turned over to the F.B.I. the digital storage media he found under the woodpile nor was the CS a documented source at the time the CS provided assistance to the F.B.I. in this case.

Notably, Agent Armstrong testified that at no time was the CS working at the behest of the F.B.I. or any other law enforcement when the CS recovered the digital storage media from under the woodpile on Defendant's property in Dixie County.  Indeed, Agent Armstrong, testified

8

that no one from law enforcement communicated with the CS or told the CS to search Defendant's property prior to the CS turning over the electronic storage media to the F.B.I. nor did the F.B.I. pay the CS or provide the CS with any benefit in exchange for obtaining the electronic storage media from Defendant's property.

Special Agent Keith Joyce also was called as a witness by the Defendant.  Agent Joyce has been a special agent with the F.B.I. for approximately eight years.  Agent Joyce is the current case agent on the investigation. The investigation was turned over to Agent Joyce after the investigation already had been started. Agent Joyce's primary role has been assisting with providing the evidence to ICAT for forensic examination.

As part of Agent Joyce's role in this case, he has listened to all of the tapes of the telephone conversations between the CS and the Defendant. According to Agent Joyce, although Defendant never mentioned child pornography on any of the recordings the Defendant referenced that there was something in the woodpile on the property which Defendant did not want the CS or anyone else "messing with it."

Agent Joyce also confirmed that at the time the CS located the

9

electronic media storage under the woodpile on Defendant's property and turned the items over to the F.B.I., the CS did not do so at the direction or behest of law enforcement. Nor was the CS provided with any benefit for retrieving and providing the electronic media storage devices to the F.B.I.

In addition to the testimony Special Agents Armstrong and Joyce, the Defendant submitted to the Court a CD-Rom and call log of nineteen telephone calls of varying length between the Defendant and the CS between July 31, 2014 and August 9, 2014.[1]  The recordings capture approximately seven hours of discussions.

The Court has reviewed the recordings, which as Defendant's counsel represented, do not contain any mention of the word child pornography by the Defendant. The discussions cover a wide variety of everyday topics, some of which has nothing whatsoever to do with the facts of this case or the criminal conduct charged in this case. The discussions address topics such as the CS's baby and family, the CS's health issues, prior employment, daily activities, automobile accidents, probation officers and the movies.

Most of the focus of the telephone conversations between the CS

---

[1] The recordings were not played at the hearing. Rather, the parties prepared a CD-Rom and submitted it to the Court for review. ECF No. 34.

and the Defendant concern Defendant's efforts to sell his property in Dixie County, and Defendant's need to obtain a residence in Florida so that he can have his supervision transferred to the Northern District of Florida. The CS and the Defendant discussed the CS's efforts to find a buyer for Defendant's Dixie County property and efforts to locate a suitable rooming house that would be acceptable to Defendant's probation officers. Defendant insisted in the conversations that he needs to be present in Florida for several days prior to any closing and that he is not comfortable closing on the sale of the Dixie County property unless Defendant is in Florida before the sale.

The Defendant and the CS also discussed starting a business together.  While the business is not identified, the implication is that the business may be illegal and involves the internet, websites and downloading from the web. The CS asked the Defendant whether "there really was a lot of money in the computer doings and all" to which Defendant explains that the market is very secretive now in terms of buying and selling and that you cannot just meet up with the individual. The Defendant further discussed how places such as Taiwan, Thailand, Vietnam and Asia are involved in the market. Defendant explained that in

11

Cambodia "they" go to mothers, families and cousins and try to get them to sell people.

The Defendant also admitted during the conversations when discussing cleaning up the property for sale, that the Defendant has "some shit stashed."  When the CS asks the Defendant which woodpile on the property the CS should not mow over, the Defendant said "I made you a drawing ... it's the one on the lefthand side, a woodpile about six foot round ... I'd rather not have anyone mess with it."

During the discussions the CS brought up Russia several times. When the CS asked the Defendant what happened the Defendant explained that "they" got hold of the billing paperwork and had everyone's information. Defendant then explained that a "rat" turned everyone in but that the Russian got paid and probably has a whole other set-up going on as well.

Thus, while the Defendant never used the word child pornography, the Defendant admittedly was well aware of something stashed in a specific woodpile on the property, which the Defendant did not want anyone to touch.  And while the level of detail regarding child pornography is not discussed, there clearly are a number of discussions concerning an

unnamed business involving Russians, and that the unnamed market has now spread to Taiwan, Thailand, Vietnam and Cambodia.

## III.  ANALYSIS

**A.     The search warrant was supported by probable cause**.

Defendant first argues that the search warrant was not supported by probable cause because the affidavit does not demonstrate on its face that the information provided by the CS or the CS himself was reliable. According to Defendant, because the determination of probable cause hinges on the reliability of the CS, and the government failed to demonstrate the reliability of the CS, the warrant fails and thus the fruits of the search should be suppressed.

There are two fundamental problems with Defendant's argument. First, the law does not require that law enforcement independently corroborate the information provided by a CS. Rather, the Court applies a totality of the circumstances approach. Under this approach when assessing information provided by a CS the Court is required to focus on the CS's veracity and basis of knowledge under the totality of the circumstances, and not on whether law enforcement independently corroborated the CS's story.  Second, the affidavit on its face, taking into

account the totality of the circumstances, contains more than sufficient information to assess the CS's veracity and basis of knowledge.

Turning first to the applicable standard, "probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location. *United States v Brundidge*, 170 F. 3d 1350, 1352 (11th Cir. 1999)(*citing United States v Gonzalez*, 940 F. 2d 1413, 1419 (11th Cir. 1991). The probable cause determination by the Court is made based upon the information in the search warrant application and affidavit. In making that determination the Court does not apply any bright line formulas but rather is required to apply "the kind of fair probability on which reasonable and prudent people, not legal technicians act." *Florida v Harris,* 133 S.Ct. 1050 (2013).

When dealing with situations, as here, involving a CS, the Supreme Court in *Illinois v Gates,* 462 U.S. 213, 230-35 (1983) changed the "two-pronged test" of *Aguilar v Texas,* 378 U.S. 108 (1964) into a totality of the circumstances test. Therefore, under the *Gates* totality of the circumstances test, the "veracity and "basis of knowledge" prongs of *Aguilar* for assessing usefulness of an informant's tips, are not

14

independent. *Brundidge* at 1352-52.  They are viewed together in light of

the totality of the circumstances. And in making the probable cause

assessment of information provided by a CS, independent police

corroboration of the CS's story is not required because such a requirement

is contrary to *Gates,* which cautioned against using rigid per se rules for

determining probable cause. *Id.* at 1353.

The Court therefore is simply required to determine based upon the

totality of the circumstances whether there was probable cause that the

digital storage devices turned over to the F.B.I. contained child

pornography. Thus, to the extent that Defendant's argument focuses upon

the lack of independent corroboration by the F.B.I of the CS's story, the

argument is inconsistent with the *Gates* totality of the circumstances test

and relies upon the out-dated and overruled test of *Aguliar,* which required

the Court independently and separately to look at veracity and then basis

of knowledge.

Secondly, applying the totality of the circumstances test the Court

has little difficulty concluding there was sufficient probable cause to search

the electronic storage media provided to the F.B.I.  For starters, a simple

examination of the items to be searched evidences that there is fair

15

probability the items contain child pornography. Attached to the affidavit in support of the search warrant as exhibit A, are photographs of the digital storage media in plastic bags.[2]  The digital storage media depicted on the photographs presented in conjunction with the application for the search warrant includes: a U.S. Robotics dial-up modem, a Dell brand Firewire (IEEE 1394) card, three Kingston brand RAM chips, seven Memorex brand DVD +RW, a Sandisk Cruzer 16gb thumb drive, a SD card slot filler and a Microsoft wireless dongle.[3] Notably, these items were turned over in plastic bags, which had been stored under a woodpile.  Common sense dictates that there is no legitimate reason or explanation for storing electronic storage devices outside in plastic bags under a woodpile. There is no reason for any individual to do this and certainly no reason for an individual who lives in rural Dixie County to bury digital storage devices underground. Had the CS simply presented the digital storage devices to the F.B.I. and told them he found the items buried under a woodpile, the F.B.I. would have had probable cause to forensically search the items to determine

---

[2] Government Ex. 1.

[3] A "dongle" is a hardware device attached to a computer without which a particular software program will not run: used to prevent unauthorized use. Http://dictionary.com/browse/dongle (Visited on 3/28/2016)

what was stored on the devices. The F.B.I. of course had much more than just that.

In addition to the delivery of digital storage media that had been buried under ground, the items were presented to the F.B.I. by the CS, an individual the F.B.I. knew was an associate of Defendant during the time the Defendant lived in Florida.[4]  The connection becomes even closer.  The CS—who the F.B.I. knew had been an associate of Defendant and not simply a stranger—told the F.B.I. he found the digital storage media on the same property on Dixie County where Defendant lived when he was arrested on the child pornography charges filed in Massachusetts.[5]  The CS told the F.B.I. that he found the items under a woodpile on the property because the Defendant told the CS that the Defendant had buried some items under a woodpile on the property.  The CS did advise the F.B.I. that the Defendant did not know the CS found the items.

The probable cause calculus does not stop there but goes further. The affidavit reflects that two months later the CS contacted Agent Armstrong concerned because the Defendant had been contacting the CS

---

[4] Gov't Ex. 1, Affidavit in support of search warrant (Aff.), ¶25.

[5] *Id.*

about the items stored under the woodpile. The Defendant told the CS the Defendant was going to be released from federal prison soon and that he was going to return to Florida.[6] The CS told Agent Armstrong that he was concerned the Defendant would harm him if the Defendant found out the CS had taken the items out of the woodpile and turned them over to the F.B.I.[7]

Agent Armstrong investigated further. He discovered that Defendant had been released from federal prison—as the CS had advised—and was living in the Coolidge House, a residential re-entry program run by the Federal Bureau of Prisons, located in the Boston area.[8] He also determined that calls made from this facility were not monitored or recorded.

Agent Armstrong and another agent then personally interviewed the CS.  During this conversation, the CS recounted to the agents in detail that the Defendant told the CS the items he buried in the woodpile contained child pornography and that the child pornography had been

---

[6] Aff. ¶26.

[7] *Id.*

[8] Aff. ¶27.

produced by individuals in Russia who the F.B.I. recently arrested.[9]

On August 13, 2014 Agent Armstrong presented the application for the search warrant to the Court.

The affidavit supporting the application for search warrant thus documents that: (1) an individual known by the F.B.I. to be an associate of a previously convicted felon for possession of child pornography, was contacted by the felon when the felon was about to be released from prison; (2) the felon advised the CS that he had buried some items under a woodpile on property in Florida; (3) the property in Florida was the same property where the felon was living when he previously was arrested for possession of child pornography; (4) the F.B.I. confirmed that the felon was living in a halfway house attempting to be released to return to Florida; (5) the known associate of the felon informed the F.B.I. that the Defendant told him there was child pornography buried under the woodpile; and (6) the F.B.I. has in its possession digital storage devices of a nature and character sufficient to store digital images such as child pornography, recovered not from a residence nor from a computer, but buried under a woodpile in the backyard.

---

[9] Aff. ¶28.

There was more than a sufficient basis for the CS's knowledge and sufficient circumstances to support the veracity of the information provided by the CS. First, the affidavit makes clear that the CS is a known associate of the Defendant when the Defendant lived in Florida. When the Defendant last lived in Florida—specifically in Dixie County—he was arrested and convicted for possession of child pornography.

Second, the items to be searched were retrieved by the CS from the same property in Dixie County where Defendant lived when he was arrested and convicted for possession of child pornography.  The property in Dixie County was identified by the F.B.I. as the same property Defendant purchased in Old Town, Florida and on which he was living in a motor home when authorities were attempting to arrest Defendant on the child pornography charges filed in the District of Massachusetts.

Third, the digital storage items were buried on the property under a woodpile, admittedly not a place where an individual typically would store computer equipment.

 Fourth, the CS told law enforcement he found the items after the Defendant told the CS that he had buried some items under the woodpile on the property.

Fifth, the items presented to the F.B.I. were stored in a plastic bag and the items appeared to be the type of digital storage devices sufficient to store images of items like child pornography.

In short, the F.B.I. had evidence presented to them from a known source—who the F.B.I. had no reason to disbelieve and who subjected himself to potential risk by handling what the source believed to contain child pornography—uncovered by the source from underneath a woodpile located on the same property where the Defendant had been living in a motor home when he was arrested. The F.B.I. confirmed that the Defendant was able to contact the CS because the Defendant was in a halfway house waiting to return to Florida.

Accordingly, based upon the totality of these circumstances the Court concludes that there was sufficient probable cause that the digital storage media already in the possession of the F.B.I. contained potential images of child pornography.  Because the search of the digital storage devices was consistent with the Fourth Amendment there is no basis to suppress the evidence obtained from the forensic search of the digital storage devices.

**B.    Omitting the information concerning the recorded telephone calls between the Defendant and the CS did not make the affidavit misleading**.

While Defendant never raised this issue in his motions to suppress, Defendant argued at the hearing that if the government had included in the affidavit the information from the recorded telephone calls the Court would not have found probable cause. Defendant says that because the Defendant never mentioned child pornography in the recorded telephone calls nor did the recorded telephone calls contain the detail about child pornography the CS related to the F.B.I, had this information been included it would have eliminated probable cause or at the very least demonstrated the lack of veracity to the CS's statements made to the F.B.I.

This argument fails because the omission of the recorded telephone calls from the affidavit was not knowingly or recklessly made and the inclusion of the information concerning the recorded telephone calls would not have resulted in a finding of no probable cause.

The Defendant's motion is governed by the standards in *Franks v. Delaware*, 438 U.S. 154 (1978).  In *Franks* the Supreme Court held that evidence seized under a search warrant should be suppressed where an agent submits a materially false statement in the affidavit and it appears

22

that with the affidavit's materially false statement set to one side, the remaining content of the affidavit is insufficient to establish probable cause. *Id.* at 171-72. The Defendant bears the burden of proving by a preponderance of the evidence that the statements were false or made with reckless disregard and that the remaining facts contained in the affidavit are insufficient to support a determination of probable cause. *United States v Novaton*, 271 F. 3d 968, 986-88 (11th Cir. 2001). Thus, to establish a *Franks* violation the defendant must carry his burden of proving (1) that the alleged misrepresentations or omissions were knowingly or recklessly made by Agent Armstrong and (2) that the result of including the alleged omissions would have been a lack of probable cause for issuance of the warrant. *United States v. Jenkins*, 901 F. 2d 1075, 1080 (11th Cir. 1990). Defendant cannot satisfy either prong of the *Franks* analysis.

Under the first prong of *Franks* the Defendant must establish that the affiant deliberately or recklessly included false statements, or failed to include material information in the affidavit. There was no testimony presented at the hearing that suggested Agent Armstrong deliberately or recklessly failed to include in the affidavit in support of the search warrant any information about the recorded telephone calls between the CS and

23

the Defendant. To the contrary Agent Armstrong—who was not the agent

in charge of directing the CS to record telephone calls with the

Defendant—testified that he was never told by the F.B.I. agents handling

the CS that Defendant said anything in those conversations which called

into question the veracity of the information in the affidavit.

The Court has listened to the tapes of the recorded telephone calls.

While the Defendant never used the word child pornography on the tapes

or used the detail the CS related to the agents about child pornography,

the tapes actually tend to bolster probable cause rather than negating

probable cause. This is so because there is no doubt based upon the

multiple recorded discussions with the Defendant that Defendant had

buried something under the woodpile on the Dixie County property that he

did not want the CS or anyone else to touch.  And the recorded tapes

make it abundantly clear that the Defendant insisted on traveling to Dixie

County before the property was sold. While the Defendant never said so

the obvious implication is that the Defendant was adamant on wanting to

remove the items buried under the woodpile.

Additionally, while the Defendant never used the word child

pornography on the recorded calls he freely discussed with the CS a

business in which the market had spread to Asian countries and described a market in Cambodia where individuals go to mothers, families and cousins and try to get them to sell people.  Admittedly the conversations were guarded and at times obtuse. But there is nothing contained in the tapes of the recorded conversations, which if included in the affidavit, would have impacted the finding of probable cause if the information had been included.

Accordingly, for these reasons, the Court concludes that the failure to include information from the recorded telephone calls in the affidavit was not intentional or reckless and had the government included details of the recorded telephone calls in the affidavit  the omitted information would not have defeated probable cause.[10]

---

[10] Defendant also argued at the hearing that even if the omission does not rise to the level of a *Franks* violation the information would have cast doubt on the veracity of the CS's statements. The recorded telephone calls do no such thing. Instead it is abundantly clear from the telephone conversations that the CS and the Defendant know each other very well. So much so that the Defendant describes in the recorded telephone calls the location of the woodpile where the items are buried. The fact that the conversations in the recorded telephone calls were guarded and somewhat obtuse suggests that the CS and the Defendant each fully understood precisely what they were talking about. The fact that Defendant did not mention child pornography in the recorded telephone calls, but according to the CS did mention child pornography in the earlier unrecorded calls, demonstrates nothing more than that Defendant was being more careful during the recorded telephone calls.

**C.    The CS did not retrieve the digital storage media at the behest of the F.B.I.**

Defendant argues in his amended motion to suppress that when the CS trespassed onto Defendant's property and retrieved the digital media storage devices buried under the woodpile, the CS was acting at the behest of law enforcement. Defendant says that the search was therefore transformed from a private search into a government search. Because the search on the property was not made without a search warrant the Defendant concludes that the search violated the Fourth Amendment requiring the Court to suppress the fruits of the search. Defendant's argument fails because there was no evidence whatsoever presented at the hearing suggesting that the F.B.I. had any involvement in the search.

Defendant argues that the CS previously worked for the government in 2008 in connection with Defendant's child pornography conviction in the District of Massachusetts and was later interviewed by the F.B.I. in 2011 in connection with the Massachusetts case. From this the Defendant surmises that the CS must have been working for the government when he trespassed on Defendant's property and retrieved the items buried under the woodpile.

Whether a search is considered a private search or a government

26

search is critical.  That is because the protections under the Fourth Amendment only proscribe governmental action; it is wholly inapplicable "to search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official."  *United States v Jacobsen,* 466 U.S. 109, 113 (1984)(*citing Walter v United States,* 447 U.S. 649, 662 (1980)(Blackmun, J. *dissenting*). Thus, even if the search and seizure of the items from Defendant's property was unreasonable or constituted a trespass, the Fourth Amendment does not apply because a search by a private individual does not raise Fourth Amendment implications. *United States v Ford,* 765 F. 2d 1088, 189-90 (11th Cir. 1985).

In determining whether a private citizen acted as a government agent, the Court considers "(1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends." *United States v Emile*, 618 Fed. Appx. 953, 955 (11th Cir. 2015)(*citing United States v Steiger,* 318 F. 3d 1039, 1045 (11th Cir. 2003).

Defendant failed to present any evidence that the retrieval of the items buried under the woodpile by the CS was carried out directly or

27

indirectly with the imprimatur of the F.B.I.  To the contrary, Special Agents

Armstrong and Joyce each testified that no one from law enforcement

communicated with the CS or told the CS to search Defendant's property

prior to the CS turning over the electronic storage media to the F.B.I. nor

did the F.B.I. pay the CS or provide the CS with any benefit in exchange for

obtaining the electronic storage media from Defendant's property.

Accordingly, the Court finds that the search was a private search and

therefore no search warrant was required because the Fourth Amendment

is not implicated.

Defendant also says the government should have included in the

affidavit information concerning the CS's prior connection to the case. The

details of the CS's connection were not required because the government

disclosed in the affidavit that the CS was an associate of Defendant when

Defendant lived in Florida. The affidavit fully disclosed that Defendant

moved to Florida in May 2011 after the F.B.I. searched Defendant's

Massachusetts residence for child pornography and then changed his

mailing address to the Dixie County property the day before the Defendant

was indicted in Massachusetts. The Court therefore was fully advised that

the Defendant had a relationship with the CS. While the exact nature of the

relationship was not detailed in the affidavit it was not misleading because the CS's involvement with Defendant's prior case involved providing assistance to law enforcement in locating and arresting the Defendant in Florida on the Massachusetts child pornography charges.

The testimony of Agent Armstrong further explained the reason the CS searched Defendant's property. According to Agent Armstrong, when the CS learned from the Defendant that the Defendant had buried something under the woodpile on the property the CS thought Defendant had buried marihuana.  The CS told Agent Armstrong that he went to the Dixie County property to dig up the marihuana and smoke it. When the CS discovered that it was not marihuana but instead appeared to be digital storage media that might contain child pornography that the Defendant previously had discussed with the CS, the CS decided to take the items to the F.B.I. office in Jacksonville and turn them in.

In short, there is simply no suggestion or any evidence that law enforcement had anything whatsoever to do with initiating the search or directing the CS to search under the woodpile. Accordingly, this argument has no merit.

## IV.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that

Defendant's Motion To Suppress, ECF No. 28, and Defendant's Amended

Motion to Suppress, ECF No. 30, should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida this 29th  day of March 2016.

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

30